### 11549

### STATE v. COUNCIL

#### (123 S. E., 788)

1. CRIMINAL LAW—INSTRUCTION URGING JURY TO CONVICT IF EVIDENCE WARRANTED HELD NOT ERROR.—An instruction that juries had been criticised for failing to do their duty, and appealing to their manhood to convict if the evidence warranted, but instructing them that if the evidence did not warrant a conviction it was just as much their duty to acquit, *held* not error.

2. HOMICIDE—ONE MAY DEPRIVE HIMSELF OF RIGHT OF SELF-DEFENSE BY WORDS.—A man may deprive himself of right of self-defense by words as well as acts.

3. CRIMINAL LAW—RETURNING JURY TO ROOM FOR FURTHER DELIBERATION NOT ABUSE OF DISCRETION.—In prosecution for homicide, giving jury additional instructions and sending them back to their room for further consideration after they had deliberated for more than 15 hours *held* not abuse of trial Court's discretion.

4. CRIMINAL LAW—INSTRUCTION THAT RECOMMENDATION TO COURT'S MERCY WOULD BE CONSIDERED HELD PROPER.—An instruction that a recommendation to mercy of the Court would have weight and consideration *held* proper.

5. CRIMINAL LAW—INSTRUCTION URGING JURY TO AGREE BECAUSE OF A PRIOR MISTRIAL HELD NOT REVERSIBLE ERROR.—An instruction that there formerly had been a mistrial, and urging the jury for that reason to agree upon a verdict, *held* not reversible error.

6. HOMICIDE—EVIDENCE HELD TO SUPPORT CONVICTION OF MANSLAUGHTER.—Evidence that defendant started difficulty by opprobrious language, deceedent struck defendant twice, and defendant drew his pistol, and, though decedent was then some distance from defendant, and was not advancing on defendant, defendant shot him, *held* to support a conviction of manslaughter.

7. CRIMINAL LAW—NO REVIEW OF MATTER APPEARING ONLY IN EXCEPTIONS.—Where the matter complained of appears only in the exceptions, it cannot be considered.

8. HOMICIDE—REFUSAL TO CHARGE AS TO MEANS OF ESCAPE HELD NOT ERROR.—A refusal to charge that means of escape is the opportunity of voiding the taking of human life which is open, plain, palpable, and obvious, *held* not error, as rule is that there must be no other reasonable way of escape that would appear to a man of ordinary prudence and courage.

Before S. McG. SIMKINS, Special Judge, Darlington, September, 1923.  Affirmed.

Paul C. Council was indicted for murder and upon conviction of manslaughter appeals.

*Messrs. T. C. Cork, F. A. Miller* and *L. M. Lawson,* for appellant, cite: *Comments on public opinion by Judge improper:* 122 S. E., 494; 86 S. C., 370. *Duty of defendant to seek means of escape:* Whart. Hom., (3rd Ed.) Sec. 390; 2 L. R. A., (N. S.) 66; 66 S. C., 469; 118 S. C., 164; 109 S. C., 409; 103 S. C., 320; 256 U. S., 335.

*Mr. J. Monroe Spears, Solicitor,* for the State, cites: *Part of verdict may be rejected as surplusage:* 16 C. J., 1110; 85 S. C., 236. *Coercion of jury:* 121 S. E., 258. *Obligation of defendant to use means of escape:* 85 S. C., 234. *Supplemental instructions to jury:* 120 S. C., 400; 105 S. C., 243; 79 S. C., 229.

July 16, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant was indicted for murder, but the State only pressed for a verdict of manslaughter. The essential facts may be briefly stated.

The deceased was seated in an automobile near drug store in Darlington. The appellant came up in another automobile, got out, and went into the drug store. He stayed in the drug store for a few minutes, and came out with a bottle of Coca-Cola. The deceased said to him, "What have you got there? you must be sick," or words to that effect. The appellant replied, "I don't know that it is any of your damn business; you are no doctor, are you?" or, "You go to hell." Witnesses do not agree as to the exact language used. The appellant got into a car with a friend, who started off. The deceased got out of his car, and the appellant asked him (the friend) to stop, as the deceased did not seem to like what he had said. The appellant got out of his friend's car, and the two men met, and after a few more words, the deceased struck the appellant two licks with his fist. The appellant drew his pistol. There is no evidence that the deceased made any further advance. The appellant then shot at the deceased three times. The deceased went down to the pavement, got up, and started off. The appellant called to the deceased to "Halt." The deceased stopped, and the appellant shot again. The deceased fell again, and died almost immediately. There was no evidence that the deceased was armed.

The jury convicted the defendant of manslaughter, and he has appealed. There are many exceptions, but the appellant in argument has reduced the questions to nine. These will be considered as formulated by appellant.

I. "Was it error for the trial Judge to make comments in his charge to the jury concerning the prevalence of crime and the causes therefor?" There was no error here. His Honor told the jury that the juries had been criticized for failure to do their duty; that his observation was that the criticism was unjust and untrue. He urged them to do their duty fearlessly. He appealed to their manhood to convict if the evidence convinced them of the guilt of the accused, but told them clearly that, if the evidence did not warrant a conviction, it was just as much their duty to acquit the defendant. There was no error here.

II. "Was it error for the trial Judge to charge the jury the legal effect of the use of opprobrious and insulting words by one who pleads self-defense?" The charge was rendered necessary by the evidence. A man may deprive himself of the right of self-defense by words as well as by acts, and the Judge was bound to tell the jury so. There was no error here.

III. "Was it error for the trial Judge to give the jury additional instructions and send them back to their room to further consider the cause after they had deliberated for more than fifteen hours?" That was within the discretion of the trial Judge, and we see no abuse of his discretion.

IV. "Was it error for the trial Judge to state to the jury that a recommendation to the mercy of the Court would have weight and consideration from him?" His Honor has the right to make the statement, and it certainly was not prejudicial to the appellant.

V. "Was it error for the trial Judge to charge the jury that there had formerly been a mistrial of the case, and urge them, for that reason, to agree upon a

verdict?" We fail to see how it could have been prejudicial. When a man is convicted and a new trial ordered, the record must go to the jury with a verdict of "Guilty" written on it. That means that the first jury found no reasonable doubt of the guilt of the defendant. A mistrial shows that there was doubt in the minds of some, at least, of the former jury. Since a reasonable doubt is sufficient for a verdict of not guilty, we see no reversible error here.

VI. "Was the verdict of the jury responsive to the evidence and the instructions given?" It was. The defendant started the difficulty by the use of opprobrious language. He stopped his friend, who was in the act of starting the machine in which he was sitting. He got out to meet the deceased, and there was evidence that he assumed a defiant attitude. When the deceased struck him, he pulled out his pistol. There was no evidence that the deceased continued to advance on him. According to the record, what could he reasonably expect? The appellant offered evidence to show that the deceased was quarrelsome and a coward; that he was ready to fight, but to fight a man who was at a disadvantage; that the deceased was standing several feel away; that the deceased used a knife in his fights. The appellant was out of the reach of the knife. Now, when judged by this record, as soon as the appellant drew his pistol, all the advantage was with the appellant, and, if the deceased was the kind of man that the appellant's witnesses said he was, then the appellant had no reasonable ground to believe that there would be any further attempt to do him any harm. It is true the appellant had been struck two blows. Self-defense protects from imminent future bodily harm, but not to revenge the former injury. The law is just, and allows the jury to take account of the effect of those injuries, and reduce the killing from murder to manslaughter. In this view of the case, the solicitor was right in not asking for a verdict of murder. The evidence not

only warranted the verdict, but no other reasonable verdict could have been found.

    VII. "Did the trial judge err in permitting the solicitor to argue to the jury, over defendant's objection, the failure of the defendant to undertake to introduce incompetent testimony and the law of mutual combat?" This point cannot be considered, as the matter complained of appears only in the exceptions.

    VIII. "Did the trial Judge err in refusing to charge 'that by means of escape he meant the opportunity of avoiding the taking of human life, which is open, plain, palpable, and obvious.'" There is no error here. The rule in this State is that there must be no other reasonable way of escape that would appear to a man of ordinary prudence and courage.

    IX. "Did the trial judge charge upon the facts in violation of the Constitution?" The Judge charged the law, and carefully and successfully avoided any charge on the facts.

The judgment is affirmed.

MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.